IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jonathan Thomas Holcomb, | ) | C/A No. 0:12-2539-JMC-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Jonathan Thomas Holcomb ("Holcomb"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In November 2009, Holcomb applied for DIB and SSI, alleging disability beginning September 30, 2008. Holcomb's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 13, 2010, at which Holcomb, who was represented by Donald L. Pilzer, Esquire, appeared

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



and testified. The ALJ issued a decision on March 16, 2011 denying benefits and concluding that Holcomb was not disabled. (Tr. 10-34.)

Holcomb was born in 1984 and was twenty-four years old at the time of his alleged disability onset date. He has a limited education and past relevant work experience as a bagger and cart pusher at a grocery store. (Tr. 160.) In his application, Holcomb alleged disability since September 30, 2008 due to losing his eyesight; back problems; short term memory; speech problems; and difficulty with reading, writing, and math. (Tr. 159.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since September 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

   \* \* \*

3. The claimant has the following severe impairments: borderline intellectual functioning, learning disorder, adjustment disorder, low back pain syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c)).

   \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 4163967(b). Since the alleged onset date, the claimant could lift or carry no more than a maximum of 20 pounds at one time and lift or carry up to 10 pounds on a frequent basis. The claimant could sit, stand, and walk up to six hours each out of an eight-hour workday. The claimant could push and pull with the upper and lower extremities in a manner consistent with the exertional demands of this residual functional capacity. The claimant could occasionally climb ladders, ropes, and scaffolds, as well as occasionally stoop and crouch. The claimant could climb ramps and stairs, balance, kneel, and crawl on a frequent basis. The claimant should avoid even moderate exposure to workplace hazards.



>      The claimant is limited to simple, repetitive work requiring no more than frequent interaction with the public.
>
> \* \* \*
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> \* \* \*
>
> 7.  The claimant was born . . . [in] 1984, and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> \* \* \*
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-34.) The Appeals Council denied Holcomb's request for review on August 10, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.



§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUE

Holcomb raises the following issue for this judicial review:

I.   Is the Commissioner's finding that Jonathan Holcomb is not disabled pursuant to listing 12.05C supported by substantial evidence?

(Pl.'s Br., ECF No. 14.)



DISCUSSION

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

Holcomb argues that the ALJ erred in finding that he did not meet Listing 12.05C for Mental Retardation. That Listing provides:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.



The United States Court of Appeals for the Fourth Circuit has recently made clear that in determining whether a claimant meets Listing 12.05, the ALJ must first find that the claimant satisfies the introductory paragraph to the Listing by finding that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D. Here, as in Hancock, Requirement C is at issue, requiring an IQ score of 60-70, which the Fourth Circuit describes as Prong 2, as well as a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as Prong 3. Id.

**A.    Deficits in Adaptive Functioning**

The ALJ specifically found that Holcomb did not meet Listing 12.05C because he did not demonstrate deficits in adaptive functioning. (Tr. 16.) Cases interpreting Listing 12.05C show that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. Accord Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012). However, the Fourth Circuit has provided instruction on the factors that play into this determination, finding that deficits in adaptive functioning "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002)).

Citing Luckey v. U.S. Department of Health and Human Services, 890 F.2d 666, 669 (4th Cir. 1989), Holcomb argues that the ALJ erred in considering Holcomb's work history in



determining whether section 12.05C criteria are met. (Pl.'s Br., ECF No. 14.) However, as argued by the Commissioner, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. Hancock, 667 F.3d at 475-76 (concluding that the ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning was supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, C/A No. 0:10-1893-CMC-PJG, 2012 WL 529982, at *6 n.3 (D.S.C. Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning) (Report and Recommendation), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012).

Holcomb also alleges that the ALJ erred in considering Holcomb's educational testing at the age of eleven. (Pl.'s Br., ECF No. 14.) However, school records and past academic performance are important indicators of deficits in adaptive functioning prior to age 22. See Salmons, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); see also Conyers v. Astrue, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8-9 (E.D.N.C. June 29, 2012) (Report and Recommendation), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012) (discussing the claimant's school history). Similarly, a claimant's diagnosis, if there is one, is pertinent: when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning prior to age 22 than if the claimant has the lesser diagnosis of borderline intellectual functioning. Conyers, 2012 WL 3282329, at *9 (discussing claimant's level of adaptive functioning

and noting that the claimant was classified in the low end of the spectrum of mildly mentally retarded);[3] Salmons, 2012 WL 1884485, at *5 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the borderline intellectual functioning category). Finally, the tasks a claimant is able to undertake, although not determinative, are considered in this analysis. See generally Hancock, 667 F.3d at 476 & n.3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

Applying these factors to the record presented, the court finds that Holcomb has failed to show that the ALJ's conclusion that Holcomb did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law. Specifically discussing Listing 12.05C, the ALJ considered Holcomb's functional academic skills, noting that although Holcomb received special education services for a learning disability and withdrew from school in the ninth grade, his individualized educational plan ("IEP") was relatively non-restrictive, requiring only seven and one-half hours of resource instruction per week. (Tr. 16, 21-22; see also Tr. 221.) The ALJ further noted that Holcomb's educational records reflected that he could participate in the general curriculum with accommodations and modifications and was slated to receive a high school diploma. (Tr. 22; see also Tr. 219-20.) The ALJ observed that Holcomb's fifth grade educational testing scores, which were deemed valid, indicated that he functioned in the low-average range of intelligence with a full scale IQ of 87 on the Weschler Intelligence Scale for Children-Revised and a full scale IQ of 83 on the Weschler Intelligence Test for Children-III. (Tr. 21-22; see also Tr. 230-

---

[3] Although Conyers was addressing Listing 12.05B, diagnosis can be pertinent even when the issue is whether the Listing 12.05C criteria are met.



31.) The ALJ noted that Holcomb reads at a minimum third grade level, and performs math at a seventh-grade level. (Tr. 16; see also Tr. 219.) In a more recent consultative examination with Dr. Larry Korn, D.O., the ALJ observed that Holcomb could: (1) perform addition and subtraction, but not complicated math; (2) recall two out of three objects after a fifteen-minute delay; (3) correctly spell the word "world" backwards; (4) answer a simple math question involving money, with limited difficulty; (5) recall the date, day of the week, location, and name of the President of the United States. (Tr. 16-17, 23; see also Tr. 276.) Further, the ALJ noted that Dr. Ron Thompson, a consultative psychological examiner, found Holcomb was oriented in all spheres, with fair judgment and insight, and currently functioned in the borderline range of intellectual functioning. (Tr. 23, 25; see also Tr. 234.) The ALJ observed that Dr. Xanthia Harkness, a state agency psychologist, found Holcomb could understand and remember work procedures; remember short, simple instructions; and maintain concentration and attention for two-hour periods. (Tr. 25; see also Tr. 262.)

In the area of communication, the ALJ noted the high-pitched quality of Holcomb's voice but observed the lack of any services or accommodations for a speech impediment in Holcomb's school records, his ability to provide readily understandable responses to questions at the hearing, and Dr. Korn's finding that Holcomb communicates adequately. (Tr. 14; see also Tr. 276.) The ALJ also cited Holcomb's ability to talk on the telephone and ability to maintain adequate communication with the public while employed as evidence that Holcomb had no communication problems which would cause limitations in adaptive functioning. (Tr. 23-24.) Regarding social and interpersonal skills, the ALJ recognized moderate difficulties in social functioning, observing Dr. Thompson's statement that Holcomb seemed minimally blessed with social skills and Holcomb's allegation that he has no friends and participates in few social activities. (Tr. 17, 24; see also Tr. 236.) However,

as the ALJ noted, the record reflects that Holcomb had no accommodations in his IEP for behavioral concerns, maintained necessary social interaction with the public in the work place, and participated in all appointments with treating physicians. (Tr. 17, 23-24.) The ALJ also noted Holcomb's ability to interact with friends and relatives when they visit. (Tr. 17, 24.)

In finding that Holcomb had moderate restriction in activities of daily living, the ALJ noted that Holcomb lives with his parents, has not attempted to live independently, and that Dr. Korn opined that Holcomb would have difficulty managing his life and finances. (Tr. 16-18; see also Tr. 277.) However, the ALJ observed that Holcomb has the ability to shower, shave, and handle personal care; play video games; watch television; shop in stores; feed his dog; and fish in a pond behind his home. (Tr. 17, 24, 26; see also Tr. 70, 73, 176-77, 182, 235.) The record further reflects that Holcomb once helped at home with laundry and dishes, but no longer attempts chores due to back pain. (Tr. 71-72.) Holcomb also indicated the ability to wash dishes and clean the kitchen when employed at a grocery store. (Tr. 69, 181.) In the area of self-direction, the ALJ recognized Holcomb's failure to obtain a driver's license, but noted that the record reflects that Holcomb's eyesight is largely responsible for his inability to drive. (Tr. 24; see also Tr. 73, 182.) The ALJ further noted that Holcomb's alleged need of accompaniment when traveling is based more on his inability to drive than any mental impairment, and that Holcomb has the ability to use public transportation. (Tr. 24; see also Tr. 262.) In addition, the ALJ observed that Holcomb's vision is relatively normal with corrective lenses. (Id.; see also Tr. 264.)

In considering Holcomb's work history, the ALJ noted that Dr. Thompson's characterization of Holcomb was consistent with his allegations of short-term memory problems and requiring additional time to complete tasks. (Tr. 24; see also Tr. 234-36.) However, the ALJ observed that



Holcomb's four years of employment at a grocery store demonstrates his ability to sustain the concentration, pace, and short-term memory necessary for unskilled labor. (Tr. 23.) The ALJ further noted that Holcomb worked without accommodation by his employer, was never fired, and quit working due to back injury rather than decreased cognitive skills. (Tr. 16, 23.)

Because the ALJ has considered pertinent evidence and weighed appropriate factors in analyzing whether Holcomb met Listing 12.05C, the court cannot say that the ALJ's determination that Holcomb did not demonstrate the requisite deficits in adaptive functioning was not supported by substantial evidence or was controlled by error of law. The fact that Holcomb can point to other evidence that supports his position does not render the ALJ's decision unsupported. See Hancock, 667 F.3d at 476.

**B.     Rejection of Recent IQ Scores**

The ALJ observed that the record as a whole demonstrates that Holcomb has IQ scores above listing severity. (Tr. 16.) The Fourth Circuit has clarified that the Commissioner may reject IQ scores if they are inconsistent with other substantial evidence. Hancock, F.3d at 474. In this case, the ALJ noted that Holcomb's more recent mental status examination by Dr. Thompson reflected a full scale IQ of 66. (Tr. 21; see also Tr. 235.) However, the ALJ observed Dr. Thompson's statement that this IQ score fell within the range of 63 to 71, with 71 being above listing level severity, and Dr. Thompson's opinion that Holcomb currently functions in the borderline range of intellectual functioning. (Tr. 22-23; see also Tr. 235.) The ALJ noted that the record alleged no injuries and provided no explanation for the decrease in Holcomb's IQ scores since the psychometric testing referenced in the educational records. (Tr. 16, 24.) The ALJ also considered possible reasons for decreased performance on the recent psychometric testing, to include Dr. Thompson's



observation that Holcomb had poor motivation, gave only fair effort during the psychometric testing, and tended to guess rather than rise to the challenge of tasks. (Tr. 23-24; see also Tr. 235.) The ALJ further noted Dr. Thompson's failure to indicate whether Holcomb wore corrective lenses during the evaluation, which the ALJ deemed significant given the medical evidence of Holcomb's decreased visual acuity without glasses. (Tr. 23; see also Tr. 264-65.) In addition, the ALJ observed Dr. Korn's notation of weakly positive or equivocal Waddell signs two days after Holcomb's testing with Dr. Thompson, and Holcomb's assertion that he had lost his eye glasses. (Tr. 23; see also Tr. 275, 277.) Psychiatric testing in the record by Dr. Harkness further reflects Holcomb's failure to meet Listing 12.05C. (Tr. 238-51.) Thus, the record contains substantial evidence to support the ALJ's rejection of Holcomb's recent psychometric test scores. However, even if the ALJ's finding concerning Prong 2 of Listing 12.05C did not rest on substantial evidence, the Commissioner's decision should still be affirmed based on the substantial evidence in the record to support the ALJ's determination that Holcomb did not demonstrate deficits in adaptive functioning as required by Prong 1 of the Listing. See Hancock, 667 F.3d at 475.

## RECOMMENDATION

For the foregoing reasons, the court finds that Holcomb has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
January 28, 2014                                  Paige J. Gossett
Columbia, South Carolina                    UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).